UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

v.

No. 19-CR-20836
Hon. Mark A. Goldsmith

Shady Awad,

    Defendant.
_____/

## Plea Agreement

The United States of America and the defendant, Shady Awad, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

### 1. Count of Conviction

The defendant will plead guilty to Count One of the indictment. Count One charges the defendant with conspiracy to commit bribery concerning programs receiving federal funds under 18 U.S.C §§ 371 and 666(a).

### 2. Statutory Minimum and Maximum Penalties

The defendant understands that the counts to which he is pleading guilty carry the following minimum and maximum statutory penalties:

| Count 1 | Term of imprisonment: | 5 years |
|---|---|---|
| | Fine: | $250,000 |
| | Term of supervised release: | Not more than 3 years |

### 3. Agreement to Dismiss Remaining Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will move to dismiss any remaining charges in the indictment against the defendant in this case. Specifically, the United States Attorney's Office will move to dismiss Counts three, five, seven, nine, eleven, thirteen, fifteen of the indictment, which charge bribery concerning programs receiving federal funds.

### 4. Agreement Not to Bring Additional Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan willnot bring additional bribery or money laundering charges against the defendant for the conduct reflected in the indictment or factual basis.

### 5. Elements of Count of Conviction

The elements of Count One are:

First:    Two or more persons conspired, or agreed, to commit the crime alleged, federal program theft.

Second: The defendant knowingly and voluntarily joined the conspiracy.

Third: One or more overt acts were committed by a conspirator in furtherance of the illegal purpose.

<u>Elements of Bribery Concerning Programs Receiving Federal Funds</u>

First: Richard Sollars and Jeffrey Baum were agents of the City of Taylor, a local government.

Second: The City of Taylor was a local government that received in any one-year period, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance or other form of federal assistance.

Third: The defendant corruptly gave offered, agreed to give, cash to Richard Sollars, with the intent to influence and reward Richard Sollars in connection with any business transaction and/or series of transactions of the City of Taylor. The one-year period of federal assistance was within twelve months before or after the commission of the offense.

**Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Between 2015 and February 2019, Richard Sollars, Mayor of the City of Taylor, Michigan, Jeffrey Baum, City of Taylor Community Development Manager and Treasurer for the Committee to Elect Richard ("RICK") Sollars ("campaign fund"), and others did unlawfully, willfully and knowingly combine, conspire and confederate and agree to corruptly solicit and demand for the benefit of any person and accept and agree

to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of the City of Taylor. Beginning in 2016, Defendant Shady Awad joined the conspiracy and gave over $30,000 in renovations to Sollars' home, over $11,000 in renovations to Sollars' lake house, over $12,000 worth of household appliances and cabinets, cash, and other items of value, with the intent to influence and reward Sollars in connection with a business, transaction, or series of transactions of the City of Taylor involving $5,000 or more.

### Credit Card Transactions for Benefit of Sollars

On various occasions beginning in October 2017 through January 2019, as Sollars directed, defendant provided his credit card information to Hadir Altoon, a developer who was interested in acquiring tax-foreclosed properties under the City's Right of First Refusal ("ROFR") program and allowed Altoon, at Sollars' direction, to charge various amounts to defendant's credit cards for the benefit of Sollars. Specifically, at Sollars' direction, Altoon charged various amounts provided by Sollars onto defendant's credit card at Dominick's Market. With defendant's knowledge and approval, Altoon then gave Sollars cash in the amounts that Sollars and/or Awad had directed ~~defendant~~ ALTOON to charge to Awad's credit cards. In furtherance of this corrupt and fraudulent scheme, and with defendant's knowledge and approval, Altoon gave Sollars over $19,000 in cash, which represented the total amount of the charges Altoon made to defendant's credit cards, as

set forth below:

| Transaction Date | Awad Credit Card No. | Amount |
|---|---|---|
| 10/24/2017 | US Bank ending 2015 | $1,775.01 |
| 11/11/2017 | US Bank ending 2031 | $5,301.23 |
| 1/10/2018 | Chase Bank ending 2628 | $1,200 |
| 10/5/2018 | US Bank ending 2023 | $3,075.75 |
| 11/28/2018 | US Bank ending 2023 | $3,150 |
| 12/13/2018 | US Bank ending 9413 | $1,060 |
| 1/29/2019 | US Bank ending 2023 | $4,120.01 |
| | | Total: $19,682.01[1] |

**Renovations to Sollars' home and lake house**

Between July 2016 and October 2018, defendant paid for improvements and renovations to Sollars' home and his lake house that included installing hardwood floors, garage doors, front doors, a garage storage unit as well as appliances and other improvements and purchases, as set forth below:

| Date | Project/Purchase | Location | Amount Paid |
|---|---|---|---|
| 07/2016 | Sliding Patio Door | Residence | $1,800 |
| 08/2016 | Hardwood flooring in bedrooms and hallway including trim, second story | Residence | $4,900 |
| 09/2016 | Cigar Humidor | Office | $1,804.27 |
| 5/25/2017 | Flooring entire house | Lake House | $7,000 |
| 6/06/2017 | Kitchen Appliances | Residence | $5,300 |
| 08/10/2017 | Deck and railings refinishing | Lake House | $2,900 |
| 09/26/2017 | Metal cabinets for garage | Residence | $2,900 |
| 11/05/2017 | Garage door | Residence | $3,825 |
| 11/19/2017 | Hall Tree with bench in garage | Residence | $4,550 |

---

[1] Each transaction included the 2.7 percent transaction fee that Altoon incurred and retained from the amount in cash Altoon gave to Sollars.

| 11/21/2017 | Hardwood flooring in basement | Residence | $4,500 |
| --- | --- | --- | --- |
| 04/26/2018 | Washer and Dryer | Residence | $3,678.65 |
| 09/24/2018 | Dyson vacuum cleaner | Residence | $634.94 |
| 10/02/2018 | Hardwood flooring in living and play room, first level | Residence | $2,500 |
| 10/23/2018 | Front door | Residence | $6,000 |
| | | | Total: $50,478.86 |

### Las Vegas Trips

In furtherance of the conspiracy, defendant gave Sollars thousands of dollars in cash to gamble while defendant, Sollars and others were in Las Vegas, Nevada in 2017 and 2018. Specifically, in October 2017, while in Las Vegas, defendant gave Sollars at least $4,000 in cash so that Sollars could gamble.

### ROFR Property Transfers

In furtherance of the conspiracy, the following occurred:

On or about July 20, 2015, without a legitimate bid process, Sollars recommended to the Taylor City Council that defendant's company, Realty Transition, be awarded all of the tax-foreclosed properties that Taylor had or would acquire under its ROFR program. As a result, in July 2015, defendant was awarded all 95 tax-foreclosed properties in Taylor's ROFR program.

On August 16, 2016, at Sollars' direction, Realty Transition was awarded 29 of the 34 tax-foreclosed properties in Taylor's ROFR program.

On July 18, 2017, at Sollars' direction, Realty Transition was awarded 38 of the 43 tax-foreclosed properties in the ROFR program.

On July 19, 2018, without the knowledge of the Taylor City Council, but with the knowledge and approval of Sollars and Baum, Altoon, as owner of Taylor South Investment, LLC, entered into an "Assignment of Development Agreement" ("Agreement") with Realty Transition, defendant's property development company, to transfer tax-foreclosed properties that the City of Taylor had originally awarded to Realty Transition to Taylor South Investment.

In July 2018, as part of the conspiracy, with the knowledge and approval of Sollars and defendant and pursuant to the agreement, Baum provided Altoon a list of nine properties that were eventually transferred and/or were intended to be transferred to Taylor South Investment by Realty Transition that had been previously awarded to Realty Transition under Taylor's ROFR program. Altoon gave Baum $500 per property for a total of $4,500 in cash to reward Baum for helping him obtain the nine properties.

In furtherance of the fraudulent scheme, on August 27, 2017, December 5, 2018, and February 8, 2019, defendant quit claim deeded to Altoon properties that the City of Taylor had originally transferred to defendant under the ROFR program.

In furtherance of the corrupt and fraudulent scheme, on December 5, 2018, defendant quit claim deeded to Altoon one property that the City of Taylor had originally transferred to defendant under the ROFR program.

In furtherance of the fraudulent scheme, on February 8, 2019, defendant quit claim deeded to Altoon five properties that the City of Taylor had originally transferred to defendant under the ROFR program.

6. **Advice of Rights**

The defendant has read the indictment, has discussed the charges and possible defenses with his attorney, and understands the crime charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

    A. The right to plead not guilty and to persist in that plea;

    B. The right to a speedy and public trial by jury;

    C. The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

    D. The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

    E. The right to confront and cross-examine adverse witnesses at trial;

    F. The right to testify or not to testify at trial, whichever the defendant chooses;

    G. If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

      H.     The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

      I.     The right to compel the attendance of witnesses at trial.

### 7. Collateral Consequences of Conviction

The defendant understands that his conviction here may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his conviction here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his conviction.

### 8. Safety Valve

The parties agree that the defendant is not eligible for the safety valve in 18 U.S.C. § 3553(f).

9. **Defendant's Guideline Range**

   A. **Court's Determination**

   The Court will determine the defendant's guideline range at sentencing.

   B. **Acceptance of Responsibility**

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(C) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a) for his guideline calculation on Count One. Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offense(s) to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C. Guideline Agreement

The parties also agree under Federal Rule of Criminal Procedure 11(c)(1)(C) that the guideline range is **37-46** months and the following guideline provisions apply to the defendant's guideline calculation on Count One:

1. §2C1.1(a)(2)- Offering, giving a bribe;

2. §2C1.1(b)(1)- More than one bribe;

3. §2C1.1(b)(2)-the value of the payments to public officials were more than $40,000 but less than $95,000; and,

4. 2C1.1(b)(3)- Offense involved an elected official.

### D. Factual Stipulations for Sentencing Purposes

The parties have no additional factual stipulations for sentencing purposes.

### E. Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraph 9.C. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### 10. Imposition of Sentence

#### A. Court's Obligation

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

#### B. Imprisonment

##### 1. Agreement

Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that the defendant's sentence of imprisonment on Count One not exceed the top of the defendant's guideline range as recommended by the parties.

##### 2. Each Party's Right to Withdraw from this Agreement

The government may withdraw from this agreement if the Court finds the correct guideline range to be different than determined by Paragraph 9C.

Defendant may withdraw from this agreement, and may withdraw from his guilty plea, if the Court decides to impose a sentence higher than the maximum allowed by Paragraph 10. This is the only reason for which defendant may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than the maximum allowed by Paragraph 10.

### C. Supervised Release

#### 1. Recommendation

The parties recommend that the Court impose a three-year term of supervised release.

#### 2. No Right to Withdraw

The parties' recommendation concerning supervised release is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the parties agreement concerning the length of the defendant's sentence of imprisonment, as described in paragraph 10.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D. Fines

There is no recommendation or agreement as to a fine.

### E. Special Assessment

The defendant understands that he will be required to pay a special assessment of $100, due immediately upon sentencing.

## 11. Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 46 months, the defendant also waives any right he may have to appeal his sentence on any grounds.

Page 14 of 17

### 12. Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of CivilProcedure 59 or 60.

### 13. Consequences of Withdrawal of Guilty Plea or Vacation of Judgment

If the defendant is allowed to withdraw his guilty plea, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

### 14. Use of Withdrawn Guilty Plea

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

### 15. Parties to Plea Agreement

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

### 16. Scope of Plea Agreement

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

Page 16 of 17

## 17. Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in theUnited States Attorney's Office by 5:00 p.m. on September 22, 2021. The government may withdraw from this agreement at any time before the defendantpleads guilty.

Saima S. Mohsin
Acting United States Attorney

David A. Gardey
Chief, Public Corruption Unit
Assistant United States Attorney

Dawn N. Ison
Assistant United States Attorney

Dated: September 15, 2021

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

_____  
David Dumouchel  
George Donnini  
Attorneys for Defendant

_____  
Shady Awad, Defendant

Dated: