UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.

D-2 Shady Awad,

    Defendant.

No. 19-cr-20836

Hon. Mark A. Goldsmith

---

**Government's Sentencing Memorandum**

---

    Shady Awad found himself between a rock and a hard place. He had walked away from his career as an engineer to become a real estate developer. (Awad: ECF No. 127, PageID.914). Awad's company, Realty Transition (RT), had been awarded 95 properties through the City of Taylor's Right of First Refusal (ROFR) program in 2015. (*Id.*, PageID.921). Awad had invested millions of dollars of his family's money into rehabbing the ROFR properties but faced many issues with the City, receiving fines and ordinance violations. (PSR ¶ 49). Unfortunately, instead of addressing these obstacles through legitimate channels, Awad believed he could bribe his way to an easier path related to the ROFR program by giving

1

into Mayor Sollars's repeated solicitations for free home renovations, gifts, cash, and other items of value. Awad corruptly gave Sollars these unjust benefits in order to pave a smoother road for the ROFR properties he had and to curry favor with Sollars so RT would continue to receive ROFR properties each year.

This type of corrupt conduct would ordinarily warrant a sentence at the top of the sentencing guideline range but in this case, based on Awad's significant cooperation, the United States requests a sentence between 15 to 19 months' imprisonment. This sentence will send a clear message that bribing public officials to advance your own personal or business interests will not be tolerated and will be met with serious consequences, even for someone who admits responsibility and cooperates in the prosecution of others.

**I.   Relevant factual and procedural history**

   **A.   Taylor's Right of First Refusal program**

In 2015, the City of Taylor created the ROFR program. (PSR ¶ 9). Under this program, each year the City acquired tax-delinquent homes and would select developers to rehabilitate and eventually purchase the properties. (*Id.*). As the mayor, Sollars had significant influence over the award of properties under the ROFR program. (PSR ¶ 10). Sollars also signed the annual development agreements for the ROFR program on behalf of the City. (Awad: ECF No. 127, PageID.921).

### B. Realty Transition becomes the preferred developer under the ROFR program and the pay-to-play scheme begins.

Under the ROFR program, the City awarded Awad's company, Realty Transition (RT), the development agreement each year from 2015 through 2018. (*Id.*, PageID.918, 926). Under the 2015 agreement, RT received 95 properties to develop. (PSR ¶ 14). During its first year, RT experienced a lot of issues with the City including failed inspections and ordinance fees. (Awad: ECF No. 127, PageID.922). In an effort to address the problems RT was having with the City, Awad met with the mayor, Richard Sollars, in early 2016. (*Id.*, PageID.923-24).

Over time, Awad and Sollars developed a personal relationship that evolved into Sollars soliciting, and Awad providing, personal benefits to Sollars including, among other things, paying for various contractors to perform work at Sollars's residence and lake house. (*Id.*, PageID.925-26). Under the ROFR program, the City selected which developer(s) would be awarded a development agreement each year. As Awad wanted to continue to be a preferred developer in the City's ROFR program, Sollars began asking Awad for bribes in the form of various home improvements and other items of value. In turn, Sollars agreed to exercise his authority as mayor to increase the likelihood that Awad would receive the vast majority of the properties in the ROFR program. (*Id.*). Under this bribery scheme, from July 2016 to February 2019, Awad corruptly provided free home renovations and other things of value to Sollars, at Sollars's request, intending to influence and

3

reward Sollars in connection with the ROFR program. (Plea Agreement: ECF No. 50, PageID.188–89). The bribes that Awad provided to Sollars included:

- Hardwood flooring (residence and lake house): $22,215.64
- Sliding door/extra screen (residence): $1,898
- Humidor: $1,804.27
- Painting (residence): $7,226.47
- Kitchen appliances (residence): $5,300
- Deck refinishing (lake house): $2,900
- Metal tool cabinets (residence): $1,242.77
- Garage door (residence): $3,845
- Garage locker system (residence): $4,550
- Cash for gambling: $4,000
- Washer and dryer (residence): $3,678.65
- Vacuum cleaner: $634.94
- Front door (residence): $6,000
- Camera and warranty: $4,043.98
- Cash from credit card transactions, Dominick's Market: $19,682.01

(PSR ¶ 46). As a result, Awad received 104 of the 114 houses that were part of the ROFR program from 2016 to 2018. (Plea Agreement: ECF No. 50, PageID.191–92). The bribes that Awad provided Sollars in connection with the ROFR program are further detailed in the Court's opinion and order regarding the loss amount. (Order: ECF No. 147, PageID.1848).

**II. Sentencing Guidelines**

In the plea agreement, the parties agreed under Federal Rule of Criminal Procedure 11(c)(1)(C) that the following guidelines provisions apply:

- USSG § 2C1.1(a)(2) – base offense level of 12 for offering or giving a bribe
- USSG § 2C1.1(b)(1) – an additional two levels because the offense involved more than one bribe

4

- USSG § 2C1.1(b)(2) – an additional six levels because the value of the benefit to the public official was more than $40,000 but less than $95,000
- USSG § 2C1.1(b)(3) – an additional four levels because the offense involved an elected public official

Based on this, and the government's recommendation for a three-level reduction for acceptance of responsibility under USSG § 3E1.1, the parties agreed that the guideline range is 37 to 46 month. (Plea Agreement: ECF No. 50, PageID.195–96).

The Probation Department applied the same provisions above but also decreased the defendant's offense level by two levels since the defendant meets the criteria for the new guideline adjustment under § 4C1.1 for certain zero-point offenders. (PSR ¶ 102). The Probation Department therefore calculated a guideline range of 30 to 37 months. The government agrees with the Probation Department's calculation of the guideline range.

In a separately-filed motion for downward departure based on Awad's substantial assistance, the government requested a sentence between 15 to 19 months' imprisonment.

### III. Argument

Title 18, United States Code, Section 3553 details a number of considerations for the Court to take into account when imposing sentence. For the defendant, the most important factors are the need to reflect the seriousness of the offense, to

5

promote respect for the law, to provide just punishment, and to promote adequate deterrence. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(B).

### A. The defendant's crime was extremely serious.

Awad participated in a corruption scheme that involved bribing an elected mayor and a staff member in order to give himself a competitive advantage. He attempted to buy the clout and influence of Sollars, who had the power to impact which developers would be chosen for the ROFR program. Awad, who had much to gain and lose, was a willing participant in Sollars's pay-to-play scheme. Such corruption and pay-to-play schemes slow (and even derail) government functions. The public suffers significant harm, including eroding faith in their government.

Awad's bribery of Sollars was not a crime resulting from a single decision or a momentary lapse of judgement. Instead, Awad ceded to Sollars's corrupt solicitations for almost 2½ years, and only stopped when they were caught in February 2019. Awad acted because he stood to gain a lot, financially. As he explained to the wood floor contractor he hired to do work at Sollars's homes, "my relationship with Rick is worth $1 million" and there were consequences to pay if Sollars was upset. (Awad: ECF No. 127, PageID.975).

Awad, through his bribes, effectively shut out the companies who competed to be awarded ROFR properties through legitimate channels. He perpetuated and enticed the corruption of a mayor who was elected by the citizens of Taylor to

make their lives better but instead used his influence to enhance his own lifestyle. A sentence between 15 to 19 months reflects the seriousness of Awad's crimes, while taking into account the significant cooperation he provided.

### B. The sentence needs to promote respect for the law and just punishment for Awad's serious crimes.

A significant sentence is needed to promote respect for the law and provide just punishment. In prosecutions such as this, the sentence imposed is important to promote respect for the law. Congress enacted 18 U.S.C. § 666 to "protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery." S. Rep. No. 98-225, p. 370 (1983). The sentence imposed should reflect this purpose.

### C. The sentence must deter others, including local politicians, from breaching the public trust.

Shady Awad engaged in a serious "pay-to-play" corruption scheme for his personal financial gain. The sentence needs to fit Awad's crime in order to send a strong message to all current and future individuals wanting to illegally buy influence and votes, that such corruption will not be tolerated. *See, e.g., United States v.* Anderson, 517 F.3d 950, 996-97 (7th Cir. 2008) (highlighting need for general deterrence in public corruption prosecutions).

General deterrence has its greatest impact in white-collar cases, like this one, because these crimes are committed in a more rational and calculated manner than

7

sudden crimes of passion or opportunity. *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013). In this case, Awad's calculated decisions to bribe the elected mayor with home renovations, appliances, a humidor, a camera, cash, and other items of value took place repeatedly, and over the course of several years. Given that businesses vying to be awarded contracts with government municipalities is a ripe ground for potential corruption, the example this Court makes through its sentence will send a distinct message that bribery of public officials to gain a competitive advantage will not be tolerated.

## IV. Conclusion

The government respectfully requests that the Court take into account Awad's cooperation as well as the factors described above and impose a sentence between 15 to 19 months' imprisonment.

*(signatures on following page)*

        Respectfully submitted,

        Dawn N. Ison
        United States Attorney


        *s/ Frances Lee Carlson*
        Frances Lee Carlson
        Assistant United States Attorney
        211 West Fort Street, Suite 2001
        Detroit, Michigan 48226-3211
        (313) 226-9696
        frances.carlson@usdoj.gov

        *s/ Robert A. Moran*
        Robert A. Moran
        Assistant United States Attorney
        211 West Fort Street, Suite 2001
        Detroit, Michigan 48226-3211
        (313) 226-9553
        robert.moran@usdoj.gov

Dated: September 11, 2024

CERTIFICATE OF SERVICE

I certify that on Wednesday, September 11, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record.

*s/ Frances Lee Carlson*
Frances Lee Carlson
Assistant United States Attorney